The first case for argument this morning is Pindter-Bonilla v. Sessions, and you may proceed. Thank you, Your Honors. My name is Charis Benson. I am here representing the petitioner, Mr. Pindter-Bonilla, who is in court this morning with us. I would like to reserve two minutes for rebuttal at the end. This case is on a petition for review from the Board of Immigration Appeals on the denial of Mr. Pindter's request for asylum, withholding of removal, and relief under the Convention Against Torture. As a preliminary matter, I would like to address the government's suggestion that this Court decline jurisdiction over the case because of Mr. Pindter having been found removable under INA 212A2A for his conviction. I would note that the statute specifically states that the jurisdictional stripping provisions do not preclude review of constitutional claims or questions of law that are raised in the petition of review. Furthermore, this Court has held that the question of whether a particular social group is a question of law, and thus this Court has jurisdiction over the matter. In this case, Mr. Pindter is a member of a particular social group, and he was persecuted, and he has a well-founded fear of persecution in the future. And furthermore, there is a nexus between his membership in a particular social group and the harm that he fears. May I ask you, as I understand it, Mr. Pindter is a citizen of Mexico, is that correct? Yes, he was born in Mexico. So how do you think that filters through to a claim with respect to Central Americans? He was born in Mexico, but he was raised in Nicaragua. He has passports from both Mexico and Nicaragua. His mother is Nicaraguan. He speaks Spanish with a Nicaraguan accent. And when he was last in Mexico, he was kidnapped and attempted or extorted or attempted extortion because of his and his mother's status as a Central American migrant. Is that because of, primarily because of his accent, that he would be identified as from Central America as opposed to Mexico? Yes, his accent and then questions of how he identifies himself as, he identifies himself primarily as Nicaraguan, not as a Mexican citizen. Another question I had relates to the hotel and the kidnapping situation. And I believe in his brief, he says that no other guests at the hotel were likewise targeted by the kidnappers. But I could not find in the record, and maybe you can help me, as to where we would know that there were other Central American immigrants or migrants at the hotel. I don't know that that was developed in that record. What the testimony was, was that they were called out or identified by name, and they believe that that's because of who they were. But isn't the record bereft of any connection between his Nicaraguan or Central American background and the kidnapping? Indeed, isn't the record clear that the kidnapping was for financial gain? He was, the kidnapping was for extortion or attempted extortion. But the reason that he and his mother were targeted for kidnapping was because of who they were, because of being in this hotel as migrants. What in the record tells us that? Because there's, excuse me, because there's no other reason that he would have been targeted and that his mother would have been targeted, or that they would have been identified by name specifically. And as far as the question of whether extortion can be persecution, this court has held that in Ayala v. Sessions last year, that extortion plus threats based on a protected group can be persecution. He was called out, and they demanded money? They were taken to another location, and there were armed people guarding them, and his mother was told to call relatives or provide information to call relatives for money. But anything in the record that suggests this is happening because we know you're from Nicaragua? I think also we have to take into account the country conditions evidence that demonstrates that this is a common practice in Mexico to target Central American migrants to force them to obtain additional money. And furthermore, that the Mexican government has been complicit to some extent, law enforcement and security forces have been complicit or have turned a blind eye to this kind of activity. If it were just Minister Pinter's experience with no one else experiencing the same thing, then I would say maybe just extortion. But in this case, it's a well-known and common experience that Central American migrants are targeted. What would you point to to show evidence of a particularized threat of torture if he returned? One thing to bear in mind in this case is that Mr. Pinter was a child when this happened, and so the level of threat may be different in that situation where a child is going to respond to a threat and to an experience differently than an adult. And as far as an individualized threat, he has experienced being kidnapped by armed men, and that certainly can demonstrate, the past harm can demonstrate his risk of future harm. I think the question was about torture as opposed to harm. Because, again, it's not just Mr. Pinter, it's that migrants, Central American migrants in Mexico are in the context of being subjected to torture. The Mexican government has been called by U.N. advocates one of the worst violators of human rights in the American continents because of the treatment of migrants in Mexico. It kind of doubles back on my original question about being both Mexican and Nicaraguan and whether, I mean, I understand because of the Sandinista situation, he's concerned about going to Nicaragua. But what about if Mexico were designated as the country of removal and he would be going back as an individual but not as a group of migrants, for example, would that make a difference? He would still be identified as Nicaraguan and the assumption that he's there as a migrant. And his mother, in her testimony, described being treated with discrimination, being told that Mexico is for Mexicans, essentially being told that she should just return to wherever she's from, and he fears that he would have the same treatment. Do you want to reserve your remaining time? Thank you. May it please the court, just very briefly, I won't get into this too much, but the attorney general disputes that this court has jurisdiction because it does not have, the INA precludes review of claims from aliens who were found removable because of a controlled substance, a conviction for a controlled substance. We understand this court held otherwise in the Petchenkov case, but the attorney general agrees with Judge Graber's dissent and we hope at some point the full court will address the matter. But going on to the merits of the instant case. Probably just as well. Thank you. Yes. But the denial of withholding and asylum and withholding and relief was supported by substantial evidence. It appears that Petitioner has abandoned the asylum claim because it was untimely filed and does not challenge that opinion. The Convention Against Torture claim is based on essentially the exact same evidence as his withholding claim. And so if the court finds the withholding claim deficient or at least denial supported by substantial evidence, it should necessarily find the same for the denial of the Convention Against Torture claim. And with respect to the withholding claim itself, the court properly determined that Petitioner had not suffered past persecution. The kidnapping, however unpleasant, did not rise to the level of extreme harm that is required by persecution. Not disputing at all that it was unsettling, but persecution requires more than just detained for a relatively brief period of time. And even if it was persecution, which again it was not, it was not on account of a protected ground, as Judge McAllen indicated and I think Judge Tyler-Borg as well, that there's no indication, nothing in the record, indicating that these kidnappers were motivated by anything other than money. They may or may not have known they were Central American migrants, but even if they did, there's no evidence that they were targeted other than to get this ransom, the money from the cousin of the United States. For that reason, this court's decision did not bring us Romero, which was... What about, you know, he, as he said, if you're with a group and they know you're not Mexican, and even though he might have a Mexican passport now and citizenry, people know he's not from Mexico. And there is country condition evidence, as his lawyer points to, about what happens to these migrant groups passing through Mexico. What is the government's response to that? There's no evidence that that was in fact the case, though. It's certainly possible, but unless these kidnappers gave some indication other than the fact that they actually did it, that they were being targeted on account of perceived Central American nationality, even though they were, he was in fact a Mexican national, a Mexican citizen, that that is just speculation and cannot support. Even in mixed motive cases, there still has to be some evidence that the other motivation exists. So, and there's just nothing here. With respect to a potential fear in Nicaragua, again, as Judge McCown noted, I mean, he's being removed to Mexico, but even assuming that wasn't the case, that just because his mother has family members who remain unharmed, even though she opposed the current government, petitioners suggest that he may be targeted for harm because he's a son, whereas the other relatives are brothers and nephews, but that's, again, speculation and not completely bereft of any type of support. And so I should also mention, very briefly, that it appears that the petitioners did not exhaust the theories presented in his brief that he would face potential harm on account of anything led to his drug convictions, either being targeted by corrupt police or gang members. He did not present that argument to the board and may not resurrect abandoned arguments in the Court of Appeals. The Court does not have jurisdiction to consider those theories. And as I said earlier, because the same evidence that he uses to support his withholding claim, which is deficient, necessarily cannot support his claim for relief under the Convention Against Torture. So the board's denial of cap protection was thus supported by substantial evidence as well. And that's about all I have to say. If there's no other questions, then I'll rest on the briefs. Thank you. Ms. Benson, you have some time. Thank you, Your Honor. The kidnappers did not say why they targeted Mr. Pinter and his mother specifically, out of all the people who were staying in the hotel. But it's not speculation to say that we know that this happens in other contexts and to presume that that is the reason that it is happening to Mr. Pinter or has happened to Mr. Pinter and his family. And Mr. Pinter's past experience of this threat and this being kidnapped, even if not sufficient to show past persecution, does create the individualized risk of future harm in the disfavored group of Central Americans and Central American migrants in Mexico. So we would argue that he is a member of a particular social group, that he did suffer past harm. And even if he didn't, he's a member of a disfavored group in Mexico and was targeted for harm on that basis and would be targeted again in the future. Thank you, Your Honors. Thank you. Thank both counsel for your argument this morning as well as your briefing. Case of Pinter Bonilla v. Sessions is submitted.
judges: Hawkins, McKeown, Teilborg